IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) RACHEL COLEMAN,<br>an individual,<br><br>    Plaintiff,<br><br>v.<br><br>(1) STATE FARM FIRE AND<br>CASUALTY COMPANY, an<br>Illinois insurance corporation,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No. 21-CV-00430-CVE-JFJ<br>)<br>)<br>) JURY TRIAL DEMANDED<br>)<br>)<br>)<br>) |

**DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S
MOTIONS IN LIMINE AND BRIEF IN SUPPORT**

**COMES NOW**, Defendant State Farm Fire and Casualty Company ("State Farm"), by and through its attorneys of record, John S. Gladd and J. Andrew Brown, and hereby submits its Motions in Limine. In anticipation of trial, State Farm submits its Motions in Limine to exclude the following categories of evidence:

1. Evidence or reference to the Oklahoma Unfair Claims Settlement Practices Act;

2. Evidence of or reference to the financial status or wealth of State Farm;

3. Evidence of or reference to other bad faith lawsuits, claims, and litigation;

4. Plaintiff's counsel's opinions, prior litigations, and work experience, including Plaintiff's counsel's history or experience with insurance;

5. Evidence, testimony, or reference to stress and/or emotional distress of Plaintiff or any of other witnesses allegedly relating to or caused by this litigation;

6. The transcripts of clandestinely recorded phone calls between Plaintiff and Jerome Abbage;

7. Any Golden Rule arguments;

8. Any reference to or testimony suggesting that State Farm should be "taught a lesson" or "sent a message"

1

**BRIEF IN SUPPORT**

I.  **INTRODUCTION**

This case arises from a small electrical fire/smoldering event that occurred in the attic of Plaintiff's three bedroom, one bathroom, roughly 1200 square foot home located at 2627 S. Winston Ave, Tulsa, Oklahoma on October 25, 2020. The fire originated in a junction box in the attic of Plaintiff's home. At all times relevant to this litigation, Plaintiff was insured under State Farm Homeowner's Policy Number 36-B5-V014-7 (the "Policy"). The Policy provided the following property coverages and limits: Coverage A, Dwelling - $157,600; Coverage B, Personal Property - $118,200; and Coverage C, Loss of Use - $47,280. To date, State Farm has issued payments as follows related to Plaintiff's claim: Coverage A - $45,838.89; Coverage B - $26,352.15; and Coverage C - $13,140.12, for a total of $85,331.16.

Plaintiff reported the loss to State Farm two days later and State Farm inspected the property on October 29, 2020. State Farm prepared estimates for the dwelling repair and coding upgrades. Plaintiff does not take issue with State Farm's handling of repairs under her dwelling coverage. In mid-January, approximately three months after filing the claim, Plaintiff submitted 22 pages of personal property inventory totaling $121,074.37 she claimed was lost in the fire. Included in this list was thousands of dollars worth of faux wedding flowers, invitations, and décor that were used in Plaintiff's September 2020 wedding. Plaintiff also submitted 20 pages of personal property inventory totaling $98,830.24 that she claims needed cleaned or restored due to the fire. In her deposition, Plaintiff admitted these two lists contained every single item contained in her home and garage at the time of the fire. Many of the items on these lists were generic, without reference to brand or size (i.e., "couch", "guitar", etc.) Moreover, the lists were duplicative, containing multiple of the same items on both lists. Ultimately, Plaintiff alleges that every single

2

item in her home was either lost, damaged, or required cleaning due to the small electric fire/smoldering event in the attic. Plaintiff threw away nearly all of the items on her "lost property" list and many of the items on her "clean/restore property list" of her claimed personal property before submitting the inventory to State Farm.

Plaintiff additionally requested reimbursement for more than 650 self-clean/packing hours (over 81 days at 8 hours per day). State Farm disputed the amount and extent of personal property damage, as supported by the facts of the loss itself, State Farm's observations after the loss and Plaintiff's own restoration company, ESR, which provided a cleaning estimate of $6,836.91. ESR confirmed to State Farm that the pack out of Plaintiff's personal property inventory would have only taken two days, compared to the 300 hours for which Plaintiff sought reimbursement.

Plaintiff filed her Petition on September 7, 2021 in Tulsa County case number CJ-2021-02580. State Farm removed this case based on diversity jurisdiction on October 6, 2021. In her Petition, Plaintiff alleged breach of contract and breach of the duty of good faith and fair dealings against State Farm. Plaintiff also alleged entitlement to punitive damages. Specifically, Plaintiff alleges State Farm has failed to pay the full amount due under the Personal Property coverage of her Policy, delayed issuing payment, performed insufficient investigations, and denied to pay covered damages. State Farm disputes all of these allegations.

I.  **ARGUMENTS AND AUTHORITIES**

The Federal Rules of Evidence provide that "[a]ll relevant evidence is admissible, except as otherwise provided," and that "[e]vidence which is not relevant is not admissible." Fed. R. Evid. 402. The Federal Rules define "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable then it would be without the evidence." Fed. R. Evid. 401. "Evidence that may be unduly prejudicial, confuse the issues, mislead the jury, cause undue delay, waste of time, or

consist of cumulative information may be excluded." *Parker v. Town of Chelsea*, 2008 WL 3876041 (N.D. Okla.); Fed. R. Evid. 403. "[W]hen ruling on the admissibility under Fed. R. Evid. 403, 'the task of the trial judge is one of balancing the probative value of and need for the evidence against the harm likely to result from its admission.'" *Hance v. Karlis*, 94 F.3d 655 (10th Cir. 1996). The Tenth Circuit Court of Appeals has noted that a trial court "has not only the discretion but also the duty to exclude evidence of little or no relevance or probative value which might have a prejudicial effect." *Sec. State Bank v. Baty*, 439 F.2d 910, 913 (10th Cir. 1971). A trial court's determination that evidence is irrelevant and inadmissible may not be reversed on appeal, absent a showing of a clear abuse of discretion. *See Hill v. Bache Halsey Stuart Shields, Inc.*, 790 F.2d 817, 825 (10th Cir. 1986). As more fully addressed below, the foregoing standards support the exclusion from trial of the categories of evidence identified herein.

### 1. *Evidence or reference to the Oklahoma Unfair Claims Settlement Practices Act*

It is well-settled under Oklahoma law that the Oklahoma Unfair Claims Settlement Practice Act ("UCSPA") does not give rise to a private cause of action. *McWhirter v. Fire Ins. Exch., Inc.*, 1994 OK 93, ¶5, 878 P.2d 1056, 1057-58 ("there is no private cause of action against an insurer who violates provisions of the Act"); *Walker v. Chouteau Lime Co.*, 1993 OK 35, ¶7, 849 P.2d 1085, 1087 ("we hold the Act [UCSPA] does not provide a private remedy under the Act. If the legislature intended to provide for a private right of action, we have no doubt the legislature knew how to do so."). The Act creates a list of duties, the breach of which violates the UCSPA only if the breach is flagrant or a business practice. *See* Okla. Stat. tit. 36, § 1250.3 (B). The UCSPA is a regulatory tool for the Insurance Commissioner, and has no probative value in a bad faith action. *See Aduddell Lincoln Plaza Hotel v. Certain Underwriters at Lloyd's of London*, 2015 OK CIV APP 34, ¶¶ 24-27, 348 P.3d 216, 223–24. The *Aduddell* court held as follows:

4

> Jury Instruction No. 14, entitled, "Unfair Claims Settlement Practices Act—Standard of Care" is contrary to law and prejudicial. The Unfair Claims Settlement Practices Act (Act), 36 O.S.2011 §§ 1250.1–1250.17, does not establish standards of care or standards of conduct for measuring whether an insurer has violated its duty of good faith and fair dealing. The Act was designed to provide the Insurance Commissioner with power to regulate the insurance industry by issuing "cease and desist" orders or by revoking or suspending an insurance company's license to do business in Oklahoma. *Walker v. Chouteau Lime Co.*, 1993 OK 35, ¶ 7, 849 P.2d 1085, 1087. The Act does not create a private remedy. *Id*

*Id.* ¶24, 348 P.3d at 223; *accord, Fees v. Am. Fam. Life Ins. Co. of Columbus ("Aflac")*, 2021 WL 2104990, at *3 (N.D. Okla. May 25, 2021) ("Given the above, the Court will grant defendant's motion [*in limine*] to the extent defendant seeks to prohibit references to violations of the UCSPA and standards therein in a manner that conflicts with *Aduddell* –i.e., there can be no mention of alleged violations of the UCSPA, the standards stated therein cannot be presented as determinative of whether there was a violation of Oklahoma bad faith law, and, obviously, there can be no suggestion that a violation of such standards equates to a finding of bad faith."); *Beers v. Hillory*, 2010 OK CIV APP 99, ¶31, 241 P.3d 285, 294 (recognizing that "a violation of the Act does not establish bad faith," and "[a]n insurer may carelessly fail to perform some duty required by the statute with such frequency to warrant administrative sanction, but that does not establish more than negligent conduct in any individual case.").[1]

Even if the Act had any probative value, which it does not, such value would be outweighed by the risk of unfair prejudice. Fed. R. Evid. 403. Discussion of complex regulatory schemes which Plaintiff has not pled or alleged to have been violated would simply confuse and mislead the jury.

---

[1] *See also Stewart v. Bhd. Mut. Ins. Co.*, 2018 WL 4092018, at *6 (N.D. Okla. 2018) (excluding "questions or contentions to the effect that [d]efendant violated the UCSPA" as they "would be confusing for the jury and unfairly prejudicial"); *Godfrey v. CSAA Fire & Cas. Ins. Co.*, 2020 WL 1056306, at *5 (W.D. Okla. 2020) (excluding "evidence and reference to the Oklahoma [UCSPA] as … irrelevant … and, regardless, would be unfairly prejudicial and confuse the issues").

Accordingly, evidence of the UCSPA is inadmissible on the grounds of relevancy and that such evidence is more prejudicial than probative.

### 2. *Evidence of or reference to the financial status or wealth of State Farm*

Under Oklahoma law, evidence relevant only to punitive damages may be submitted only in a bifurcated, second stage of trial after the jury has made a finding, at a minimum, of reckless disregard. Okla. Stat. tit. 23, § 9.1(B). State Farm therefore respectfully requests that the Court prohibit the introduction of financial condition evidence unless and until second stage proceedings are underway.

It is well settled that evidence of a defendant's financial condition is generally not admissible with respect to liability or compensatory damages. The Supreme Court of the United States has emphasized a presumption that a plaintiff is made whole by compensatory damages, "so punitive damages should only be awarded if . . . further sanctions [are needed] to achieve punishment or deterrence." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003). Under Oklahoma law, "[c]ompensatory damages are awarded on the basis . . . of the detriment or injury suffered by plaintiff, and that alone...." *Sawin v. Nease*, 1939 OK 546, 97 P.2d 27, 32. The *Sawin* Court distinguished between compensatory damages, wherein a defendant's finances are not relevant, and punitive damages, wherein "the ability of the defendant to pay, or his wealth or poverty, may properly be one of the elements considered." *Id.*

To avoid the prejudice of financial evidence in the liability stage, the legislature has mandated that punitive damages be determined in separate proceedings. Section (B), (C), and (D) of Okla. Stat. tit. 23, §§ 9.1 all require any consideration of a defendant's financial condition to come in "a separate proceeding conducted after the jury has . . . awarded actual damages." *Id.* (emphasis added); *see also* Okla. Stat. tit. 23, § 9.1 (E). Evidence of State Farm's financial condition or worth is simply not relevant to a liability determination, nor is it probative of compensatory damages. The introduction of State Farm's financial condition or net worth in the liability and actual damages stage of trial would be unfairly prejudicial to State Farm and would

6

serve only to confuse the issues, mislead the jury, or invite the jury to determine issues on an improper emotional basis. *U.S. v. Caraway*, 534 F.3d 1290, 1301 (10th Cir. 2008). The Tenth Circuit, interpreting Oklahoma law, recognized that evidence of financial wealth should not be admitted until it is determined that punitive damages are recoverable. *Whiteley v. OKC Corp.*, 719 F.2d 1051, 1055 (10th Cir. 1983). Therefore, any and all evidence of the financial condition or net worth of State Farm must be excluded unless and until second-stage proceedings are underway.

### 3. *Evidence of or reference to other bad faith lawsuits, claims, and litigation*

Under Oklahoma law, the duty of good faith and fair dealing is premised upon an insurer's contractual relationship with a particular insured. *See Allstate Ins. Co. v. Amick*, 1984 OK 15, 680 P.2d 362. The essence of a cause of action in bad faith under Oklahoma law "is the insurer's unreasonable and unjustifiable withholding of payment." *London v. Trinity Cos.*, 1994 OK CIV APP 59, ¶ 10, 877 P.2d 620, 622 (citing *McCorkle v. Great Atl. Ins. Co.*, 1981 OK 128, 637 P.2d 583. The determination of the reasonableness or unreasonableness of an insurer's denial of an insured's claim must be made "under the circumstances" in which an individual claim is made. *Williamson v. Emasco Ins. Co.*, 696 F. Supp. 1583, 1583 (W.D. Okla. 1988) (interpreting Oklahoma law and citing *Christian v. Am. Home Assur. Co.*, 1977 OK 141, 557 P.2d 899); McCorkle, ¶ 21, 637 P.2d at 587. Moreover, the reasonableness of an insurer's conduct is not to be evaluated in hindsight. Rather, the Oklahoma Supreme Court has noted that "[t]he decisive question is whether the insurer had a 'good faith belief, at the time its performance was requested.'" *Buzzard v. Farmers Ins. Co., Inc.*, 1991 OK 127, ¶ 14, 824 P.2d 1105, 1109 (emphasis in original) (internal quotation and citations omitted); *Willis v. Midland Risk Ins. Co.*, 42 F.3d 607, 612 (10th Cir. 1994) (interpreting Oklahoma law).

In this case, evidence and allegations that State Farm may or may not have breached its duties to other insureds at other times under other circumstances and other insurance contracts is simply irrelevant to the issue of whether State Farm breached the duty of good faith in this particular case. Accordingly, evidence of other bad faith claims and lawsuits should be excluded. Such evidence will not tend to make the existence of any fact of consequence to the determination

this action more or less probable than without the evidence. Therefore, all such evidence and testimony should be excluded from trial.

### 4. Plaintiff's counsel's opinions, prior litigations, and work experience, including Plaintiff's counsel's history or experience with insurance

Inappropriate and irrelevant statements made by Plaintiff's counsel relating to personal opinions, or prior litigation experience in other cases, including other insurance bad faith cases, should be excluded. Examples of such improper statements include "this is the worst case I've ever seen," "in all my years of suing insurers, this was the worst," "I used to represent insurance companies," or other hyperbolic statements. These types of statements and opinions are improper, irrelevant, and prejudicial. A lawyer shall not in trial state a personal opinion as to the justness of a cause, the credibility of a witness, or the culpability of a civil litigant." *Burke v. Regalado*, 935 F.3d 960, 1031 (10th Cir. 2019); *see also Polansky v. CNA Ins. Co.*, 852 F.2d 626, 627-28 (1st Cir. 1988) (holding statements from counsel such as "in my opinion," "it wasn't convincing to me," and "I don't believe" were improper).

Furthermore, no objection or limiting instruction after the fact can undo the prejudice resulting from such statements. *See O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1306 (C.A. Tex. 1977) ("mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds"). These types of prejudicial statements and comments are routinely excluded *in limine* to protect the integrity of trial. *See Taylor v. Union Pac. R. Co.*, 2010 WL 5343295, *3 (S.D. Ill. 2010) ("Taylor's counsel may not offer personal opinions about the credibility of parties, witnesses, or defenses"); *Presto v. Ill. Dept. of Human Serv.*, 2003 WL 21196237, *3 (N.D. Ill. 2010) ("the law is well established that it is improper for counsel to express personal opinions during such

arguments"). Accordingly, this Court should exclude inappropriate and irrelevant statements made by Plaintiff's counsel relating to personal opinions, or prior litigation experience in other cases, including other insurance bad faith cases. This includes, but is not limited to, statements of counsel's personal opinions, prior litigation experience, opinions regarding the alleged degree and/or reprehensibility of alleged bad faith conduct, opinions regarding the insurance industry in general, and statements regarding Plaintiff's counsel's work history.

### 5. *Evidence, testimony, or reference to stress and/or emotional distress of Plaintiff or any of other witnesses allegedly relating to or caused by this litigation*

State Farm anticipates Plaintiff will allege that bringing this lawsuit has caused Plaintiff or other witnesses stress and/or emotional distress. "Generally, the stress and inconvenience of suing or being sued are not recoverable damages. Such emotions, while outside the normal course of a layperson's daily life, are the normal and expected results of the legal process." JON R. ABELE, EMOTIONAL DISTRESS: PROVING DAMAGES, p. 62 (Lawyers & Judges Publishing Co., Inc. 2003); *accord, Knussman v. Maryland*, 272 F.3d 625, 641-42 (4th Cir. 2001) ("Generally speaking, litigation-induced emotional distress is never a compensable element of damages."). Furthermore, "[a]ll litigation . . . results in some detriment to those involved." *Id.* at ¶29 (quoting *A.W. Huss Co. v. Continental Cas. Co.*, 735 F.2d 246, 256 (7th Cir. 1984)).

This Court, as well as numerous courts from other states and federal jurisdictions, bar recovery for litigation stress. *See Fees v. Am. Family Life Ins. Co. of Columbus*, 2021 WL 2104990, *6 (N.D Okla. May 25, 2021) (granting a motion in limine to exclude evidence of litigation-related stress as such stress is not a recoverable damage); *Godfrey v. CSAA Fire & Cas. Ins. Co.*, 2020 WL 1056306, *7-8 (W.D. Okla. Mar. 4, 2020). (holding that evidence of litigation-related stress is irrelevant, confusing to the jury, and a waste of time); *Picogna v. Bd. of Ed. Of Tp. Of Cherry Hill*, 671 A.2d 1035, 1038-39 (N.J. 1996) ("In other reported state court decisions, courts are

virtually unanimous in holding that litigation-induced stress is not recoverable as a separate component of damages ... Similarly, federal court decisions are unanimous in holding that litigation-induced stress may not be recovered as damages"); *Torres v. Auto. Club*, 41 Cal.App.4th 468, 43 Cal.Rptr.2d 147, 154 (1995) (no damages for litigation stress in an insurance action); *Zimmerman v. Direct Fed. Credit Union*, 262 F.3d 70, 79 (1st Cir. 2001) ("[a]n alleged tortfeasor should have the right to defend himself in court without thereby multiplying his damages ....").

Based on the foregoing law, this Court should exclude evidence, argument, testimony, and reference to Plaintiff's or other witnesses' alleged emotional distress arising from this litigation.

### 6. *The Transcripts of the Clandestinely Recorded Phone Calls Between Plaintiff and Jerome Abbage Should Be Excluded*

Plaintiff clandestinely recorded two phone conversations between herself and Mr. Abbage. Those calls are dated February 12, 2021 and August 9, 2021. During this litigation, Plaintiff has provided transcripts of those calls. These transcripts were not transcribed by a certified court reporter, rather, they were prepared by Plaintiff's attorney. These transcripts have not been properly authenticated and should be excluded from trial. Fed. R. Evid. 901 and Fed R. Evid. 1002; *see also Moore v. Hinds Cnty. Bd. of Sup'rs*, 2011 WL 5117101, *3 (S.D. Miss. Oct. 25, 2011) (excluding phone call transcription because it had not been authenticated). This is especially true because Mr. Abbage will be available to testify at trial and the recordings may be played at trial. There is no reason for the unauthenticated, self-transcribed transcripts to be admitted into evidence.

### 7. *Golden Rule Arguments Should Be Excluded*

The "Golden Rule" argument is a jury argument in which a lawyer asks the jurors to reach a verdict by imagining themselves or someone they care about in the place of the plaintiff. *Shultz v. Rice*, 809 F.2d 643, 651-52 (10th Cir. 1986) ("Golden Rule" arguments are those "in which the jury is exhorted to place itself in a party's shoes with respect to damages."). "A Golden Rule

argument is 'universally recognized as improper, because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence.'" *Blevins v. Cessna Aircraft Co.*, 728 F.2d 1576, 1580 (10th Cir.1984).

Courts have consistently excluded such evidence in insurance bad faith cases. *See Fees,* 2021 WL 2104990, at *4 ("Accordingly, the Court finds that counsel shall refrain from arguing the golden rule, i.e., counsel cannot ask 'that the jurors should put themselves into the shoes of the plaintiff, and do unto the plaintiff as they would have the plaintiff do unto them under similar circumstances.'"); *Graves v. Pennsylvania Manufacturers' Indem. Co.*, 2019 WL 10058744, at *3 (W.D. Okla. 2019) ("Defendants ask the Court to preclude any 'Golden Rule' testimony or argument as a means for undue emotional appeal to the jury. Plaintiff concedes that such argument is 'off limits' and that counsel will not make any such argument."); *Higgins v. State Auto Prop. & Cas. Ins. Co.*, No. 2012 WL 3023176, at *3 (N.D. Okla. 2012) ("In its twenty-third objection, Defendant seeks to prohibit Plaintiff's counsel from using the "Golden Rule" argument or any other argument attempting to place the jurors in the place of the Plaintiff. Defendant's Twenty−Third Objection is GRANTED.").[2]

Based on the foregoing law, this Court should prohibit "Golden Rule" testimony and argument made by Plaintiff, counsel, and witnesses. Such testimony or argument merely cultivates

---

[2] *See also Chichakli v. Gerlach*, 2018 WL 3625840, at *2 (W.D. Okla. 2018) (recognizing that the "Golden Rule" argument " encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence," and ordering that "Plaintiff is directed to refrain from invoking the Golden Rule or inviting the jury to place themselves in his position."); *Burke v. Regalado*, 935 F.3d 960, 1030−31 (10th Cir. 2019) ("Under the 'Golden Rule,' it is impermissible '(1) to ask jurors how much the loss of the use of their legs would mean to them, ... ; (2) to tell jurors 'do unto others as you would have them do unto you,' ... ; or (3) to tell jurors, in a reverse golden rule argument, 'I don't want to ask you to place yourself in [the plaintiff's] position.'"); *Beene v. Ford Motor Co.*, 513 F. App'x 755, 761-62 (10th Cir. 2013) (asking the jury to 'put themselves in Plaintiff's position' violates the "Golden Rule").

the unfairness that Fed. R. Evid. 403 is designed to protect against; the creation of emotional prejudicial bias in favor of one party and against another.

### 8. *Any Reference to or Testimony Suggesting that State Farm Should be "Taught a Lesson" or "Sent a Message"*

Any testimony, references, or suggestions to the effect that State Farm "should be taught a lesson" or "sent a message" are inflammatory, inherently prejudicial, and inappropriate during the first stage of the trial. These types of statements have no place in the liability stage of the trial. This Court and other federal courts sitting in Oklahoma have recently granted these types of motions in limine, noting "[plaintiffs] and their counsel are prohibited from using language about sending a message, m Godfrey v. CSAA Fire * Cas. Ins. Co., 2020 WL 1056306, *7 (W.D. Okla. Mar. 4, 2020). aking an example of [the insurer], punishing [the insurer] or inviting the jury to award damages based on punishment or deterrence when only compensatory damages are at issue in the first stage of trial." *Godfrey*, 2020 WL 1056306, *7; *see also Fees,* 2021 WL 3104990, *4 ("references to punishing, sending a message, or to making an example of defendant are similarly excluded from the first phase of trial."); *Smith v. CSAA Fire & Cas. Ins. Co.*, 2020 WL 4340546, *5 (W.D. Okla. Jul. 28, 2020) (accord). Based on the foregoing, this Court should exclude from trial any reference by or testimony from Plaintiff, her counsel, or her witnesses about "teaching State Farm a lesson," "sending State Farm a message," or the like.

## II. CONCLUSION

**WHEREFORE**, premises considered, State Farm Fire & Casualty Company respectfully requests this Court an order from this Court excluding from trial the above categories of evidence.

Respectfully submitted,

**ATKINSON, BRITTINGHAM, GLADD, FIASCO & EDMONDS**
A PROFESSIONAL CORPORATION

 /s/  J. Andrew Brown
John S. Gladd, OBA #12307
J. Andrew Brown, OBA #22504
1500 ParkCentre
525 South Main Street
Tulsa, OK 74103-4524
Telephone:  (918) 582-8877
Facsimile:   (918) 585-8096
Email:   jgladd@abg-oklaw.com
Email:   dbrown@abg-oklaw.com
*Attorneys for Defendant SFF&CC*


## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of October, 2022, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Joseph F. Bufogle, Sr.
BUFOGLE & ASSOCIATES
5801 E. 41sr Street, Suite 105
Tulsa, OK 74135
Email:   jbufogle@msn.com
Email:   bufoglelaw@sbcglobal.net
*Attorney for the Plaintiff*

/s/ J. Andrew Brown

S:\Files\416\412\MIL-wmm.docx